1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11
12

CERTAINTEED GYPSUM, INC.,

13

Plaintiff,

14

v.

15

PACIFIC COAST BUILDING
PRODUCTS, INC. and PABCO
BUILDING PRODUCTS, LLC,

16
17

Defendants.

Case No. 19-CV-00802-LHK

**ORDER CONSTRUING DISPUTED
TERMS OF PATENT NOS. 10,125,492
AND 10,132,076 AND CORRECTING
TERM OF PATENT NO. 10,132,076**

18
19

Plaintiff CertainTeed Gypsum, Inc. ("CertainTeed" or "Plaintiff") brings the instant case

20

seeking a declaratory judgment that two patents owned by Defendant Pacific Coast and Building

21

Products Inc. ("Pacific Coast") are unenforceable due to inequitable conduct and that Plaintiff has

22

not infringed those patents.  ECF No. 1 ("Compl.").  Defendant Pacific Coast and Defendant

23

PABCO Building Products, LLC ("PABCO") (collectively, "Defendants") counterclaimed patent

24

infringement.  ECF No. 68.  Plaintiff then counterclaimed invalidity.  ECF No. 87.

25

The parties now seek construction of two related terms, "inner surface" and "inner unclad

26

surface," used in the claims of the following patents-in-suit: U.S. Patent Nos. 10,125,492 ("the

27

'492 patent") and 10,132,076 ("the '076 patent").  Defendants also request a judicial correction of

1

28

1   a term in claim 1 of the '076 patent.

2          Having considered the parties' submissions, the relevant law, and the record in this case,

3   the Court issues the following constructions: (1) "inner surface" means "inner face," and (2)

4   "inner unclad surface" means "inner unclad face."  The Court also corrects claim 1 of the '076

5   patent.

6   **I.      BACKGROUND**

7          **A.  Factual Background**

8               **1.  The Parties**

9          Plaintiff CertainTeed is a Delaware corporation with its corporate headquarters in

10  Pennsylvania.  Compl. ¶ 10.  CertainTeed manufactures and sells gypsum wallboard products,

11  including a product called the "SilentFX QuickCut."  ECF No. 87 ¶ 19.

12         Defendant Pacific Coast is a California corporation with its principal place of business in

13  California.  Compl. ¶ 11.  Pacific Coast is the owner of the '492 and '076 patents.  *Id.* ¶ 13.

14  Defendant PABCO is a Nevada limited liability company with its principal place of business in

15  California.  *Id.* ¶ 12.  PABCO is the exclusive licensee of the '492 and '076 patents.  *Id.* ¶ 14.

16  PABCO manufactures and sells gypsum wallboard products, including a product called the

17  "QuietRock EZ-SNAP."  ECF No. 82, Counterclaims ¶ 16.

18             **2.  The Patents**

19         Both the '492 patent and the '076 patent are titled "Acoustical Sound Proofing Material

20  with Improved Fracture Characteristics and Methods for Manufacturing Same."  The applications

21  for both patents were filed on March 1, 2013, and both patents issued on November 13, 2018.

22  The patents are related to Defendant Pacific Coast's U.S. Patent No. 9,388,568 ("the '568 patent"),

23  which issued from U.S. Patent Application No. 11/697,691 ("the '691 application").  The '492

24  patent issued from a continuation of the '691 application and the '076 patent issued from a

25  divisional of the '691 application.  Thus, the patents have identical figures, nearly identical

26  specifications, and similar claims.

27

28  Case No. 19-CV-00802-LHK
    ORDER CONSTRUING DISPUTED TERMS OF PATENT NOS. 10,125,492 AND 10,132,076 AND
    CORRECTING TERM OF PATENT NO. 10,132,076

United States District Court
Northern District of California

2

In general, the patents relate to "construction techniques and products" for soundproofing buildings. *See generally* '492 patent col. 1:42–67. The patents state that most existing techniques and products require "additional (sometimes costly) construction materials or extra labor expense due to complicated designs and additional assembly steps." *Id.* at col. 1:63–67.

The patents also state that one existing product which avoids extra costs and steps is a "laminated damped drywall panel" as disclosed in U.S. Patent No. 7,181,891 ("the '891 patent"). *Id.* at col. 2:1–4. The '891 patent, which is also owned by Defendant Pacific Coast, describes a laminated structure that "comprises a sandwich of two outer layers of selected thickness gypsum board which are glued each to an interior constraining layer." '891 patent, col. 2:2–5.

According to the patents, however, installing a traditional laminated damped drywall panel is impractical. '492 patent, col. 2:7–10. The patents explain that it is difficult to cut a traditional panel down to size because the inner surfaces of the component gypsums boards "have a liner back paper . . . that has a high tensile strength." *Id.* at col. 2:15–19. Accordingly, the panel "must be scored multiple times and broken with great force over the edge of a table or workbench," which often means that "the quality of the resulting break (in terms of accuracy of placement and overall straightness) is poor." *Id.* at col. 2:10–15.

The patents describe and claim a new "laminar structure" that can be cut more easily than a traditional laminated panel. *Id.* at col. 3:13–16. The structure "comprises a sandwich of two outer layers of selected thickness gypsum board, each lacking the standard liner back paper, which are glued to each other using a sound dissipating adhesive." *Id.* at col. 3:23–29. The claims of the '492 patent are directed to the structure itself. *See id.*, col. 8, line 14. By contrast, the claims of the '076 patent are directed to methods of forming the structure. *See* '076 patent, col. 8, line 14.



FIG. 1

3

1    Figure 1 of the patents depicts "one embodiment of this invention."  '492 patent, col. 3:51–

2    54.  In this embodiment, the two gypsum board layers (101 and 103) are "fabricated using

3    standard well-known techniques" that the patents do not describe.  *Id.* at col. 4:47–49.  The

4    "bottom face of gypsum layer 101 is an unfaced (without paper or fiberglass liner) interior surface

5    104."  *Id.* at col. 4:50–51.  Similarly, "the top face of gypsum layer 103 is an unfaced (without

6    paper or fiberglass liner) interior surface 105."  *Id.* at col. 5:48–50.  Between the gypsum board

7    layers is a "layer of glue 102" that is "[a]pplied to surface 104."  *Id.* at col. 4:55–56.

8    **3.  Prosecution History of the Patents**

9    Because the patents were prosecuted together and the prosecution of both patents relied on

10    the same representations and arguments, the Court treats the prosecution history of the '492 patent

11    as representative.

12    The '492 patent issued from U.S. Patent Application No. 13/783,165 ("the '165

13    application"), which was a continuation of U.S. Patent Application No. 11/697,691 and originally

14    had 41 claims.  When Defendants submitted the '165 application to the U.S. Patent and Trademark

15    Office ("PTO"), they included a preliminary amendment that reduced the number of claims to 19:

16    claims 1–41 were cancelled and claims 42–60 were added.  *See* Preliminary Amendment dated

17    Mar. 1, 2013, at 3–6, in Appl. No. 13/783,165.

18    In July 2013, an Examiner of the PTO rejected all the claims of the '165 application as

19    unpatentable for obviousness and non-statutory double patenting.  *See* Non-Final Action dated

20    July 1, 2013, at 5–6, 13, in Appl. No. 13/783,165;

21    After this initial rejection, Defendants amended the claims again.  *See* Amendment dated

22    October 1, 2013, in Appl. No. 13/783,165.  Specifically, Defendants amended independent claims

23    42 and 58 and added claims 61–63.  *Id.* at 2–6.

24    The Examiner rejected these amended claims as well.  As relevant to the instant case, the

25    Examiner initially rejected claims 42–47, 50, 51, and 58–60 as obvious over a combination of U.S.

26    Patent No. 4,663,224 ("Tabata") and U.S. Patent No. 5,601,888 ("Fowler").  Non-Final Action

27

28

Case No. 19-CV-00802-LHK
ORDER CONSTRUING DISPUTED TERMS OF PATENT NOS. 10,125,492 AND 10,132,076 AND
CORRECTING TERM OF PATENT NO. 10,132,076

United States District Court
Northern District of California

dated April 15, 2014, at 3, in U.S. App No. 13/783,165 ("Non-Final Action").  The Examiner also rejected the relevant claims for non-statutory double patenting over various patents owned by Defendants.  *Id.* at 19–22.  After Defendants filed a response, the Examiner affirmed his initial decision.  *See* Response to Office Action dated July 15, 2014, in U.S. App No. 13/783,165 ("Prosecution Response"); Final Action dated August 24, 2014, in U.S. App No. 13/783,165 ("Final Action").

Defendants appealed this rejection to the Patent Trial and Appeal Board ("PTAB") of the PTO.  After several rounds of briefing and a hearing, the PTAB reversed the Examiner's obviousness rejections of claims 42–51, 58–61, and 63.  Decision on Appeal dated June 11, 2018, at 11, in U.S. App No. 13/783,165.  However, the PTAB affirmed the Examiner's double-patenting rejections.  *Id.*

On remand to the Examiner, Defendants disclaimed all rights to the patents that formed the basis of the double-patenting rejections.  Terminal Disclaimer dated July 18, 2018, in U.S. App No. 13/783,165.

After Defendants filed their Terminal Disclaimer, Examiner issued a Notice of Allowance that allowed claims 42–51, 58–61, and 63.  Notice of Allowance dated September 13, 2018, in U.S. App No. 13,783,165.  These claims subsequently issued as claims 1–15 of the '492 patent.

### B. Procedural History

On February 14, 2019, Plaintiff filed a complaint seeking a declaratory judgment that the '492 and '076 patents are unenforceable due to inequitable conduct and are not infringed by Plaintiff's SilentFX QuickCut product.  *See* Compl. ¶¶ 116–143.

On April 15, 2019, Defendants moved to dismiss the entire instant case and argued that Plaintiff had failed to allege an "actual or imminent" controversy that would give this Court Article III jurisdiction.  ECF No. 29 ("MTD") at 8.  Defendants also moved to dismiss the inequitable conduct claim on the ground that Plaintiff had failed to plead the claim with the particularity required by Federal Rule of Civil Procedure 9(b).  MTD at 16.  In connection with

their motion to dismiss, Defendants filed a request for judicial notice.  ECF No. 29-1.

On May 10, 2019, Plaintiff filed an opposition to Defendants' motion to dismiss.  ECF No. 41.  In connection with its opposition, Plaintiff filed a request for judicial notice.  ECF No. 42.

On May 23, 2019, the Court stayed the instant case pending resolution of Defendant Pacific Coast's appeal of a parallel case involving the '568 patent.  ECF No. 46.  In that case, the Court held that claim 21 of the '568 patent is invalid because the term "scored flexural strength" is indefinite.  *Pac. Coast Bldg. Prod., Inc. v. Certainteed Gypsum, Inc.*, No. 18-CV-00346-LHK, 2018 WL 6268880, at *13 (N.D. Cal. Nov. 29, 2018).  On June 30, 2020, the Federal Circuit affirmed the Court's indefiniteness determination.  *Pac. Coast Bldg. Prod., Inc. v. CertainTeed Gypsum, Inc.*, 816 F. App'x 454, 455 (Fed. Cir. 2020).  On August 11, 2020, Plaintiff informed the Court that the Federal Circuit's mandate had issued.  ECF No. 50.

On October 2, 2020, the Court reopened the case.  ECF No. 53.  On October 14, 2020, Defendants filed a reply in support of their motion to dismiss.  ECF No. 56.

On January 11, 2021, Defendants answered Plaintiff's complaint and asserted counterclaims against Plaintiff.  ECF No. 68.  Defendants asserted that Plaintiff's SilentFX QuickCut product directly infringes at least claim 1 of the '492 patent and at least claim 1 of the '076 patent, both literally and under the doctrine of equivalents.  ECF No. 68, Counterclaims ¶¶ 24–30, 40–46.  Defendants also asserted that Plaintiff has indirectly infringed the same claims by inducing its business partners and customers to make and use the SilentFX QuickCut product.  *Id.* ¶¶ 31–39, 47–55.  On February 1, 2021, Defendants amended their answer and counterclaims.  ECF No. 82.

On February 16, 2021, Plaintiff answered Defendants' counterclaims and brought its own counterclaims seeking a declaratory judgment that the asserted claims of the '492 and '076 patents are invalid for failing to meet the statutory requirement of nonobviousness.  ECF No. 87.  Plaintiff also sought a declaratory judgment that several unasserted claims of both patents are indefinite based on the Federal Circuit's decision regarding the '581 patent.  *Id.*

Case No. 19-CV-00802-LHK
ORDER CONSTRUING DISPUTED TERMS OF PATENT NOS. 10,125,492 AND 10,132,076 AND
CORRECTING TERM OF PATENT NO. 10,132,076

1    On March 9, 2021, Defendants moved to dismiss Plaintiff's counterclaims regarding the

2    invalidity of unasserted claims.  ECF No. 93.  On March 23, 2021, Plaintiff opposed Defendants'

3    motion to dismiss.  ECF No. 97.  On March 30, 2021, Defendants filed a reply in support of their

4    motion to dismiss.  ECF No. 98.

5    On April 8, 2021, Plaintiff amended their invalidity counterclaims as not to include any

6    counterclaims regarding the unasserted claims of the '492 and '076 patents.  ECF No. 101.  On

7    April 14, 2021, Defendants withdrew their motion to dismiss Plaintiffs' counterclaims.  ECF No.

8    102.  On April 22, 2021, Defendants answered Plaintiff's amended counterclaims.  ECF No. 105.

9    On April 23, 2021, the parties submitted a joint claim construction statement.  ECF No.

10   106.  The parties agreed that the Court should construe the terms "inner surface" and "inner unclad

11   surface" in the asserted claims.  *Id.* at 2, 13.  Plaintiff stated that those terms "are the most

12   significant to the resolution of the case and may be case dispositive."  *Id.* at 14.  Defendants

13   disputed that "any claim construction is case dispositive."  *Id.*  Defendants also requested that the

14   Court judicially correct a term of one of the asserted claims.  *Id.* at 2.

15   On May 11, 2021, Defendants filed their Opening Claim Construction Brief.  ECF No. 111

16   ("Opening Br.").  On May 25, 2021, Plaintiff filed its Responsive Brief.  ECF No. 122 ("Resp.

17   Br.").  On June 4, 2021, Defendants filed their Reply.  ECF No. 139 ("Reply Br.").

18   In the meantime, on April 14, 2021, the Court granted Defendants' motion to dismiss

19   Plaintiff's inequitable conduct claims without prejudice.  *See Certainteed Gypsum, Inc. v. Pac.*

20   *Coast Bldg. Prod., Inc.*, No. 19-CV-00802-LHK, 2021 WL 1405477 (N.D. Cal. Apr. 14, 2021).

21   On May 14, 2021, Plaintiff filed its First Amended Complaint.  ECF No. 113.  On May 28, 2021,

22   Defendants moved to dismiss Plaintiff's First Amended Complaint.  ECF No. 127.  On June 18,

23   2021, Plaintiff opposed Defendants' motion to dismiss.  ECF No. 141.  On July 2, 2021,

24   Defendants filed their reply.  ECF No. 149.  A hearing on Defendants' motion to dismiss is set for

25   October 14, 2021.  ECF No. 127.

26   On August 19, 2021, the Court held a *Markman* Hearing regarding the meaning of the

27

28   Case No. 19-CV-00802-LHK
     ORDER CONSTRUING DISPUTED TERMS OF PATENT NOS. 10,125,492 AND 10,132,076 AND
     CORRECTING TERM OF PATENT NO. 10,132,076

United States District Court
Northern District of California

7

terms "inner surface" and "inner unclad surface."  ECF No. 170.   At the hearing, the Court asked the parties to address the significance of *Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298 (Fed. Cir. 2003), a case which the parties had not raised in their briefs.  On August 24, 2021, Plaintiff submitted a supplemental brief addressing *Anchor Wall*.  ECF No. 175. On August 25, 2021, Defendants moved to strike Plaintiff's supplemental brief or, in the alternative, file their own brief addressing *Anchor Wall*.  ECF No. 177.  Because the Court had asked the parties to address the case at the hearing, the Court granted Defendants' motion to file their own limited supplemental brief.  ECF No. 180.  On September 8, 2021, Defendants filed a supplemental brief addressing *Anchor Wall*.  ECF No. 181.

## II.       LEGAL STANDARD

The Court construes patent claims as a matter of law based on the relevant intrinsic and extrinsic evidence.  *See Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272 (Fed. Cir. 2014) (en banc); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips*, 415 F.3d at 1316 (internal quotation marks and citation omitted).  Accordingly, a claim should be construed in a manner that "stays true to the claim language and most naturally aligns with the patent's description of the invention."  *Id.*

In construing claim terms, a court looks first to the claims themselves, for "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Generally, the words of a claim should be given their "ordinary and customary meaning," which is "the meaning that the term[s] would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312–13.  In some instances, the ordinary meaning to a person of skill in the art is clear, and claim construction may involve "little more than the application of the widely accepted meaning

8

Case No. 19-CV-00802-LHK
ORDER CONSTRUING DISPUTED TERMS OF PATENT NOS. 10,125,492 AND 10,132,076 AND
CORRECTING TERM OF PATENT NO. 10,132,076

1    of commonly understood words." *Id.* at 1314.

2         In many cases, however, the meaning of a term to a person skilled in the art will not be

3    readily apparent, and a court must look to other sources to determine the term's meaning. *See id.*

4    Under these circumstances, a court should consider the context in which the term is used in an

5    asserted claim or in related claims and bear in mind that "the person of ordinary skill in the art is

6    deemed to read the claim term not only in the context of the particular claim in which the disputed

7    term appears, but in the context of the entire patent, including the specification." *Id.* at 1313.  The

8    specification "'is always highly relevant'" and "'[u]sually . . . dispositive; it is the single best

9    guide to the meaning of a disputed term.'" *Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic,*

10   *Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  Indeed, "the only meaning that matters in claim

11   construction is the meaning in the context of the patent." *Trs. of Columbia Univ. v. Symantec*

12   *Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016).  Where the specification reveals that the patentee has

13   given a special definition to a claim term that differs from the meaning it would ordinarily possess,

14   "the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316.  Likewise, where the

15   specification reveals an intentional disclaimer or disavowal of claim scope by the inventor, the

16   inventor's intention as revealed through the specification is dispositive. *Id.*  Finally, though the

17   specification may describe a preferred embodiment, the claims are not necessarily limited only to

18   that embodiment. *Id.* at 1323; *see also Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143,

19   1151 (Fed. Cir. 2003) ("The general rule, of course, is that claims of a patent are not limited to the

20   preferred embodiment, unless by their own language.").

21        A court may also consider the patent's prosecution history, which consists of the complete

22   record of proceedings before the United States Patent and Trademark Office ("USPTO") and

23   includes cited prior art references.  The prosecution history "can often inform the meaning of the

24   claim language by demonstrating how the inventor understood the invention and whether the

25   inventor limited the invention in the course of prosecution, making the claim scope narrower than

26   it would otherwise be." *Phillips*, 415 F.3d at 1317.  "Particularly useful are 'express

27

28   Case No. 19-CV-00802-LHK
     ORDER CONSTRUING DISPUTED TERMS OF PATENT NOS. 10,125,492 AND 10,132,076 AND
     CORRECTING TERM OF PATENT NO. 10,132,076

9

United States District Court
Northern District of California

representations made by or on behalf of the applicant to the examiner to induce a patent grant,' which include 'arguments made to convince the examiner that the claimed invention meets the statutory requirements of novelty, utility, and nonobviousness.'" *Kaken Pharmaceutical Co., Ltd. v. Iancu*, 952 F.3d 1346, 1353 (Fed. Cir. 2020) (citing *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)).

A court is also authorized to consider extrinsic evidence in construing claims, such as "expert and inventor testimony, dictionaries, and learned treatises." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).  Expert testimony may be particularly useful in "[providing] background on the technology at issue, ... explain[ing] how an invention works, . . . ensur[ing] that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or . . . establish[ing] that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318.  Extrinsic evidence, however, is considered "less significant than the intrinsic record" and "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at 1317–18 (internal quotation marks and citations omitted).  Thus, although extrinsic evidence may be useful in claim construction, ultimately "it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319.  Any expert testimony "that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history" will be significantly discounted.  *Id.* at 1318 (internal quotation marks and citation omitted).

## III.    DISCUSSION

The parties request a construction of the terms "inner surface" and "inner unclad surface," which are found in the asserted claims of the '492 and '076 patents.  Additionally, Defendants request that the Court judicially correct a mistyped term in claim 1 of the '076 patent.  The Court addresses these requests in turn.

10

United States District Court
Northern District of California

**A.  Construction of "inner surface" and "inner unclad surface"**

The parties propose that both terms should be construed as follows:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "the interior surface not covered by edge cladding" |

The disputed terms appear in the asserted claims of both patents.  For example, claim 1 of the '492 patent recites:

1.  A laminated building structure, comprising:

a first gypsum board having two surfaces, said two surfaces including a first outer clad surface and a first **inner unclad surface**, wherein the entire **inner surface** of the first gypsum board is unclad;

a first layer of viscoelastic glue placed directly on the first **inner unclad surface**; and

a second gypsum board located proximate to said first layer of viscoelastic glue, said second gypsum board having two surfaces, said two surfaces including a second outer clad surface and a second **inner unclad surface**, wherein the entire **inner surface** of the second gypsum board is unclad.

'492 patent, col. 8:14–26 (emphasis added).  Claim 1 of the '076 patent recites a method for "foiling" the same laminated building structure.  '076 patent, col. 8:14–27.

Although the parties generally agree that the phrase "cladding" refers to paper or other "cover material," the term "edge cladding" does not appear in the claim, the specification, or the prosecution history.  *See* ECF No. 122-2 ¶ 18 (Plaintiff's expert report) ("Tonyan Decl."); ECF No. 111-1-B ¶ 18 (Defendants' expert report) ("Pawlak Decl.").  Indeed, Defendants' only source for the term "edge cladding" is the declaration of their expert, Dr. Joel Pawlak.  Pawlak Decl. 43–46.  Although Dr. Pawlak asserts that a relevant skilled artisan would be familiar with the term, Plaintiff's expert, Dr. Timothy Tonyan, strongly disputes that assertion.  Dr. Tonyan, who is a relevant skilled artisan, states that the term "was not used with any regularity in industry in the [relevant] timeframe" and that he does not "recall using or encountering [the term] in the [relevant] timeframe."  Tonyan Decl. at 3.  Accordingly, Defendants' proposed construction uses a term that appears only in their expert report and that Plaintiff's expert strongly disputes.

The parties' infringement allegations provide important context for understanding why

11

United States District Court
Northern District of California

1   Defendants are seeking this construction.  Although "a court may not use the accused product . . .

2   as a form of extrinsic evidence to supply limitations for patent claim language," the accused

3   product may "supply the parameters and scope of the infringement analysis, including its claim

4   construction component."  *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322,

5   1331 (Fed. Cir. 2006).  Plaintiff alleges that the "SilentFX QuickCut products do not embody the

6   limitation that 'the entire inner surface of the [first and second] gypsum board is unclad'" because

7   "[a]s a result of the manufacturing process used to create SilentFX QuickCut products, there is

8   paper cladding on the inner surface of the gypsum cores."  Complaint ¶¶ 133, 141.  In response,

9   Defendants allege in the Counterclaims that, if the SilentFX QuickCut has paper on its inner face,

10  there is only paper on the edges of that face.  Counterclaims ¶ 20–21.  Defendants thus seek a

11  construction which allows the board to have paper on the edges of its inner face.

12          Defendants' construction rests on the theory that a skilled artisan would understand the

13  term "inner surface" as referring to a subregion of the board's inner face.  Defendants concede

14  that, because the claim requires the "entire inner surface" to be "unclad," the "inner surface" must

15  have no cladding on it at all.  Reply Br. at 4.  According to Defendants, however, a skilled artisan

16  would know that the process for manufacturing a gypsum board leaves "edge cladding" on the

17  board's inner face.  Relying on Dr. Pawlak's declaration, Defendants assert that the first step in the

18  manufacturing process is to pour liquid gypsum onto a piece of paper and to wrap the paper to

19  cover every face of the board but the top face.  Opening Br. at 2.  That step leaves the top face

20  exposed except for where the paper "wraps around the edges," forming "edge cladding":

21

22

External Cladding
(i.e., front paper
or cream face)                    Gypsum
                                  Core

26  *Id.* at 2.  In turn, the second step is to place a second piece of paper cladding on the top face of the

27                                          12

United States District Court
Northern District of California

board, "which creates a gypsum core encased by paper":



*Id.* Defendants contend, based on this background material and evidence from the specification, that a skilled artisan would understand the term "unclad inner surface" to require standard gypsum boards that have not gone through the second step. Thus, Defendants contend, the terms "inner surface" and "inner unclad surface" should be construed as referring to the region of the board's face left exposed by the first step, *i.e.*, "the interior surface not covered by edge cladding."

In turn, Plaintiff contends that the claim language, specification, and prosecution history make clear that the inner face of the board must have no cladding on it at all, including edge cladding. In light of that evidence, Plaintiff contends, the term "inner surface" must refer to the entire inner face of the board. Because Plaintiff believes that this result follows naturally from the claim language, Plaintiff proposes that the Court construe "inner surface" and "inner unclad surface" to have their "plain and ordinary meaning."

The Court agrees with Plaintiff. However, because a "plain and ordinary meaning" construction would not provide a jury with sufficient guidance, the Court construes "inner surface" to mean "inner face" and construes "inner unclad surface" to mean "inner unclad face" for the following reasons. Whereas Plaintiff's proposed construction gives meaning to every limitation in the claim, Defendants' proposed construction deprives the limitation "entire inner surface . . . is unclad" of meaning. Although Figure 1 of the patents could be interpreted as depicting edge cladding, the specification's description of Figure 1 is too ambiguous to compel that interpretation and Plaintiff identifies other aspects of Figure 1 that suggest the opposite conclusion. Moreover,

13

United States District Court
Northern District of California

Plaintiff identifies a statement which implies that the claimed board has only a single "inner surface." In addition, during prosecution, Defendants overcame an invalidity rejection by arguing that it would be impossible to manufacture the invention by separately manufacturing two standard gypsum boards and combining them. Indeed, Defendants stated that manufacturing their commercial embodiment requires a special process that does not leave edge cladding. In light of these statements, Defendants' extrinsic evidence about the process for manufacturing standard gypsum boards does not inform the meaning of the term "inner surface."

Thus, as the Court explains in the following sections, the claim language, specification, and prosecution history all weigh in favor of Plaintiff.

### 1. Claim Language

Although the claim language is not dispositive, it weighs in favor of Plaintiff. As explained below, Plaintiff's proposed construction gives meaning to every key limitation in the claim. By contrast, Defendants' proposed construction deprives the term "entire inner surface" of meaning.

Defendants concede that the claim language does not compel their proposed construction. Instead, Defendants argue that there is nothing inherent in the term "surface" that requires the claimed "inner surface" to cover the entire face of the board. Reply Br. at 7–8. By contrast, Plaintiff contends that "surface" is synonymous with "face" and that the board's "inner surface" must extend the entire length of the board. Resp. Br. at 11.

Defendants are correct that an object's "surface" does not have to extend across the entire width of the object. In *Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298 (Fed. Cir. 2003), the Court of Appeals for the Federal Circuit construed the terms of a patent that claimed a "a masonry block" with a "back surface." *Id.* at 1307. The district court had "construed the 'back surface' limitation to require a back surface 'spanning the full width of the block.'" *Id.* (internal citation omitted). In vacating the district court's construction, the Federal Circuit consulted dictionary definitions to determine that "back" means "the side or surface of

14

United States District Court
Northern District of California

something that is opposite to the side that is regarded as its front or face" and that "surface" means "the exterior or outside of an object or body." *Id.* Thus, the Federal Circuit concluded, the "ordinary meaning of the claim term 'back surface' is a surface at the back of the block." *Id.*

Applying that logic here, "surface" refers to a region of one of the board's exterior faces. In turn, "inner" indicates that the surface is located on the face of the board next to the center of the claimed structure. Accordingly, the only inherent characteristic of an "inner surface" is that it is a region of the face of the board that lies next to the center of the claimed structure.

However, Defendants' proposed construction arbitrarily deprives a key limitation of meaning. Under Defendants' proposed construction, the size and position of the "inner surface" would depend entirely on the size and position of the edge cladding. As Defendants conceded at the *Markman* Hearing, nothing prevents the edge cladding from extending almost all the way across the board's inner face. In that scenario, the claim's requirement that "the entire inner surface of the . . . board is unclad" would lose meaning. '492 patent, col. 8:17–18. Instead of identifying an important feature of the inner surface, it would merely require the tiny fraction of the board not covered by edge cladding to remain unclad. Indeed, under Defendants' proposed construction, the only purpose of this limitation would be to ensure that the edge cladding does not cover the entire inner face of the board. Defendants' proposed construction thus would give undue importance to the edge cladding, a feature that does not appear in the claim language, at the expense of an express limitation.

By contrast, Plaintiff's proposed construction would give meaning to that limitation by having it require that there is no cladding at all on the board's inner face. Thus, because "claims are interpreted with an eye toward giving effect to all terms in the claim," the claim language weighs in favor of Plaintiff. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006).

### 2. Specification

The specification weighs slightly in favor of Plaintiff. Although Figure 1 of the patents could be interpreted to depict edge cladding, there is no specific text that supports that

15

United States District Court
Northern District of California

interpretation.  Accordingly, Defendants' interpretation of Figure 1 relies on atextual assumptions that are not obviously correct.  Indeed, Plaintiff presents its own interpretation of Figure 1 that undermines several of those assumptions.  Plaintiff also highlights a statement which implies that the board has only a single inner surface.  Thus, on balance, the specification suggests that "inner surface" means "inner face."

The parties' specification arguments center on Figure 1 and its accompanying description. As discussed, Figure 1 "shows the laminar structure of one embodiment of th[e] invention":



FIG. 1

'492 patent, col. 4:21–22.  The accompanying description states that "top layer 101 is made up of a paper or fiber-glass faced gypsum material," that the "gypsum board in top layer 101 typically is fabricated using standard well-known techniques," that the "bottom face of gypsum layer 101 is an unfaced (without paper or fiberglass liner) interior surface 104," that "[a]pplied to surface 104 is a layer of glue 102," and that the "top face of gypsum layer 103 is an unfaced (without paper or fiberglass liner) interior surface 105."  *See id.* at col. 4:34–56; *id.* at col. 5:48–50.

Defendants contend that Figure 1 and its accompanying description prove that "inner surface" must be construed to account for edge cladding.  Defendants contend that Figure 1 is the "preferred embodiment" of the claimed invention and that the disputed claim language must be construed to account for the features depicted in Figure 1.  Opening Br. at 12–13 (citing *National Steel Car, Ltd. V. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1336 n.19 (Fed. Cir. 2004)). Specifically, Defendants highlight the dark solid lines and faint dotted lines that surround gypsum

United States District Court
Northern District of California

layers 101 and 103, the labels for interior surfaces 104 and 105 that point to the dotted lines, and the specification's statement that gypsum layers 101 and 103 are "paper or fiber-glass faced" except for surfaces 104 and 105.  *See id.* (citing '492 patent, col. 4:47–51; *id.* at col. 5:45–50). Citing this evidence, Defendants contend that the best interpretation of Figure 1 is that the dark solid lines indicate the presence of cladding and the faint dotted lines indicate the absence of cladding.  *See* Opening Br. at 10–12.  It thus follows, Defendants contend, that Figure 1 displays a board that has both an inner face with cladding on its edges *and* an "unfaced . . . interior surface." Under that line of reasoning, "inner surface" must be construed to allow for a board that has cladding on the edges of its inner face.

In response, Plaintiff contests the relevance of Figure 1.  According to Plaintiff, Figure 1 is irrelevant to the claim construction inquiry because Defendants use Figure 1 to deviate from the "ordinary and customary meaning" of "inner surface."  Resp. Br. at 13.  Although Plaintiff concedes that an inventor may change the meaning of a claim term by acting "as his own lexicographer" or by "disavow[ing] the full scope of a claim," Plaintiff contends that Figure 1 does not provide a sufficiently clear indication that the inventor of the '492 and '076 patents meant to redefine the term "inner surface."  *Id.* (citing *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)).

Plaintiff also provides two reasons that, even if Figure 1 is relevant, Figure 1 supports Plaintiff's construction.  First, Plaintiff highlights the specification's statement that "layer of glue 102" is "[a]pplied to surface 104."  Resp. Br. at 12–13 (citing '492 patent, col. 4:56).  Because the object labeled 102 extends across the dotted and solid lines, Plaintiff argues, *both* lines must be part of "interior surface 104."  *Id.* at 13.  Second, Plaintiff highlights the word "is" in the sentence "the bottom face of the gypsum layer 101 *is* an unfaced . . . interior surface 104."  *Id.* at 14 (citing '492 patent, col. 4:50–51) (emphasis added).  If the inventor had meant to limit "inner surface" to a portion of the board's face, Plaintiff contends, the inventor would have stated that the bottom face *contains* an unfaced interior surface.  *Id.*

United States District Court
Northern District of California

1    The Court rejects Defendants' argument that Figure 1 warrants special solicitude and

2    Plaintiff's argument that Figure 1 is only relevant if it "clearly redefines" the disputed language.

3    Although a patent's description of its "preferred embodiment" is especially important, the

4    specification here does not indicate that Figure 1 is the "preferred embodiment."  Instead, the

5    specification states that Figure 1 displays "*one* embodiment" of the invention.  '492 patent, col.

6    4:21–22 (emphasis added).  The terms "one embodiment" and "preferred embodiment" are not

7    synonymous.  *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1345 (Fed. Cir. 2001)

8    (explaining that patent's use of the phrases "one embodiment," "other embodiments," and

9    "preferred embodiment" showed that the invention "could be embodied 'in various ways'").  In

10   turn, although a patent must "clearly redefine" a term to deviate from the term's "ordinary and

11   customary meaning," Defendants do not argue that Figure 1 changes the ordinary meaning of

12   "inner surface."  Instead, Defendants make the standard argument that Figure 1 provides context

13   for determining the ordinary meaning of "inner surface."  *See, e.g.*, *MBO Laboratories, Inc. v.*

14   *Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) (determining the ordinary

15   meaning of "body slidably receiving the needle" with reference to a figure depicting the body).

16   Accordingly, the Court interprets Figure 1 like any other relevant specification evidence.  If a

17   relevant skilled artisan would interpret Figure 1 as informing the meaning of "inner surface," the

18   Court's claim construction must account for Figure 1.  *Phillips*, 415 F.3d at 1313.

19   Although Defendants' interpretation of Figure 1 is plausible, it depends on several

20   assumptions that are not apparent from the text of the specification.  Like the claim language, the

21   specification does not use the phrase "edge cladding" or otherwise refer to the concept of "edge

22   cladding."  Indeed, the specification does not mention either the dark solid line or the faint dotted

23   line specifically, let alone state that the lines are meant to indicate certain types of material.

24   Moreover, although the labels 104 and 105 point to the dotted lines in Figure 1, it is not obvious

25   that those labels are meant to refer *only* to the dotted lines and not to the entire inner faces of the

26   respective boards.  Thus, Defendants' interpretation assumes that a skilled artisan would be

27

18

28   Case No. 19-CV-00802-LHK
     ORDER CONSTRUING DISPUTED TERMS OF PATENT NOS. 10,125,492 AND 10,132,076 AND
     CORRECTING TERM OF PATENT NO. 10,132,076

United States District Court
Northern District of California

familiar with the concept of edge cladding, that a skilled artisan would understand the dark lines in Figure 1 as referring to edge cladding, and that a skilled artisan would know that labels 104 and 105 *only* refer to the dotted lines. None of these assumptions are implausible, but they are not so obvious that Defendants' interpretation of Figure 1 resolves the dispute.

The aspects of Figure 1 identified by Plaintiff undermine these assumptions. First, the phrase "*is* an unfaced . . . interior surface" implies that the bottom face and the interior surface 104 are the same structure. *See* '492 patent, col. 4:50–51. This implication undermines Defendants' assumption that labels 104 and 105 refer only to the dotted lines. Similarly, because layer of glue 102 extends across the entire length of the board, the specification's statement that "layer of glue 102" is that "[a]pplied to surface 104" suggests that interior surface 104 includes both the dotted and solid lines. '492 patent, col. 56–57. Although this statement leaves open the possibility that the layer of glue is applied to parts of the board other than interior surface 104, it casts doubt on Defendants' argument that Figure 1 can only be interpreted one way.

A final piece of specification evidence weighs in favor of Plaintiff's proposed construction. Responding to Defendants' assertion that every embodiment in the specification includes edge cladding, Plaintiff highlights the statement that in "one embodiment, standard paper-faced wallboard, typically gypsum, comprises the external surfaces of the laminated structure with the inner surface of said wallboard being bare with no paper or other material being placed thereon." '492 patent, Abstract. Although it is theoretically possible for the "inner surface" to make up a small portion of the board and for that portion to be "bare," it would be odd to use such an absolute term if that was the intended result. Moreover, the patent's use of the phrase "*the* inner surface," juxtaposed with the phrase "*the* external surfaces," implies that the board has only a single inner surface, which must be bare.

Given that Figure 1 does not strongly support either proposed construction, this final piece of specification evidence means that the specification leans slightly in favor of Plaintiff. Thus, taken together, the claim language and specification support Plaintiff's proposed construction.

19

United States District Court
Northern District of California

### 3. Prosecution History

Representations made by Defendants during the prosecution of the '492 and '076 patents confirm that Defendants' proposed construction cannot be correct. Specifically, Defendants overcame an obviousness rejection of both patents by arguing that it is impossible to manufacture the claimed structure by simply combining two traditional gypsum boards. Because Defendants' proposed construction depends on the idea that the boards of the claimed invention have edge cladding because they are manufactured like traditional gypsum boards, that proposed construction is unavailable.

As discussed, an Examiner of the PTO initially determined that the asserted claims of the '492 and '076 patents were obvious over a combination of U.S. Patent No. 4,663,224 ("Tabata") and U.S. Patent No. 5,601,888 ("Fowler"). *See* pp. 4–5, *supra*; Non-Final Action at 3. The Examiner explained that Tabata teaches a laminated structure comprising "a first gypsum board . . . having two surfaces including a first outer and a first inner surface," a "first layer of viscoelastic glue," and a "second gypsum board . . . located proximate to said first layer of viscoelastic glue . . ., said second gypsum board having two surfaces including a first outer and first inner surface." Non-Final Action at 3–4 (citing Tabata, col. 3:47–53). Because Tabata does not disclose whether the inner surface of the structure is unclad, the Examiner looked to Fowler, which teaches "gypsum panels without cladding, such as a paper cladding, on a surface since the paper has very poor fire resistance." *Id.* at 4 (citing Fowler, col. 4:43–56). Fowler also teaches "the use of paper fiber within the core of the board to provide the board with certain flexural strengths." *Id.* The Examiner concluded that it would have been obvious to a relevant skilled artisan "at the time the invention was made to have constructed the gypsum boards of Tabata . . . such that the entire inner surfaces of the boards are unclad while the outer surfaces of the boards are clad with a paper cladding, as taught in Fowler, by instead including paper fibers within the core of the gypsum board of Tabata." *Id.*

Responding to this decision, Defendants noted that their claims require traditional gypsum

United States District Court
Northern District of California

1  wallboard and argued that it would be impossible to combine Fowler's lack of cladding with

2  Tabata's traditional gypsum wallboard.  According to Defendants, "[r]egular gypsum wallboard is

3  not and cannot be made without paper cladding because the wallboard would break under their

4  own weight."  Prosecution Response at 3.  By contrast, Fowler's gypsum fiberboard does not have

5  that problem because the "'presence of the paper fiber'" mixed with the gypsum "'makes it

6  possible to produce building materials having good physical characteristics, such as flexural

7  strength . . . **without the need** for a separate surfacing membrane such as the paper facing on

8  conventional gypsum wallboard.'"  *Id.* (citing Fowler, col. 6:19–25) (emphasis in original).

9  Relying on this passage, Defendants contended that it would not have been obvious to apply

10  Fowler's lack of cladding to a structure that calls for traditional gypsum wallboard.

11  Although the Examiner recognized that Defendants' claimed invention requires traditional

12  gypsum wallboard, the Examiner affirmed his earlier decision, noting that "nowhere within the

13  Fowler reference is there evidence that a regular gypsum wallboard will not function without a

14  paper cladding."  Final Action dated Aug. 25, 2014, at 22, in Appl. No. 13/783,165.  Critically, the

15  Examiner "question[ed] how Applicant's own invention could function properly if the first and

16  second gypsum boards did not comprise a paper cladding, where such boards would 'break under

17  [their] own weight,' . . . before they are adhesively attached to one another."  *Id.*

18  On appeal to the PTAB, Defendants continued to argue that it would be impossible to

19  manufacture the claimed invention using traditional gypsum boards and, in response to the

20  Examiner's skepticism, described the process for manufacturing their commercial embodiment.  In

21  their Pre-Appeal Brief, Defendants repeated their argument that "[r]egular gypsum wallboard *is*

22  *not and cannot be made without paper cladding* because the wallboard would break under its own

23  weight."  ECF No. 122-9 at 2 (emphasis added).  Noting the examiner's question about "how

24  applicant's own boards could function properly without the paper cladding before lamination,"

25  Defendant "direct[ed] examiner to U.S. Patent 7,908,818," which also belongs to Defendants.  *Id.*

26  That patent discloses a "process of bisecting a regular panel to achieve two panels with inner

27

28  Case No. 19-CV-00802-LHK
ORDER CONSTRUING DISPUTED TERMS OF PATENT NOS. 10,125,492 AND 10,132,076 AND
CORRECTING TERM OF PATENT NO. 10,132,076

21

1  unclad surfaces immediately before lamination." *Id.*  In their Appeal Brief, Defendants presented

2  this argument as the main reason for overturning the Examiner's obvious rejection.  Appeal Brief

3  dated May 5, 2015, at 4, 6–7, in Appl. No. 13/783,165.

4      At the PTAB hearing, Defendants expressly stated that the claimed invention *cannot* be

5  made by simply combining two traditional gypsum boards without top paper layers.  Toward the

6  beginning of the hearing, an Administrative Patent Judge ("APJ") of the PTAB asked Defendants

7  to describe their process for manufacturing the claimed invention.  ECF No. 122-4 at 4 ("PTAB

8  Hearing Transcript").  Defendants explained that they "have a giant band saw that horizontally

9  bisects" a standard gypsum board.  *Id.* at 5.  After bisecting the board, Defendants use a "suction

10  cup system" to "carefully pick up the top piece," place glue on the bottom piece, and immediately

11  put the top piece back down so it "doesn't break under its own weight."  *Id.*  Later in the hearing,

12  the same APJ asked Defendants why it would not be obvious to manufacture the claimed

13  invention using standard gypsum boards without top layers.  *Id.* at 9.  Defendants responded that

14  "you can't even move it and flip it over to apply the glue" and "if it were that easy that's how

15  [Defendants] would make their commercial product."  *Id.*  The APJ pressed further, asking why it

16  would not be possible to "pick up a one sided piece of gypsum board and then carefully flip it over

17  and laminate it down on top of another."  *Id.* at 9–10.  Defendant responded that "it does not work

18  to do it that way" and that "[y]ou cannot flip it, it breaks under its own weight."  *Id.* at 10.

19      In the PTAB's decision reversing the Examiner's obviousness determination, the PTAB

20  relied on Defendants' argument that it would not have been obvious to combine Tabata and

21  Fowler because it is impossible to manufacture the claimed invention using traditional gypsum

22  boards.  Specifically, the PTAB noted Defendants' argument "that Tabata discloses *wallboard*,

23  Fowler relates to *fiberboard*, and the teachings in Fowler regarding providing only one clad

24  surface (or no clad surfaces) on a board are not applicable to the wallboard of Tabata because

25  wallboard, without cladding on both surfaces, is much weaker than fiberboard."  Decision on

26  Appeal at 5 (emphasis in original).  The PTAB also highlighted Defendants' "process of bisecting,

27

28  Case No. 19-CV-00802-LHK
ORDER CONSTRUING DISPUTED TERMS OF PATENT NOS. 10,125,492 AND 10,132,076 AND
CORRECTING TERM OF PATENT NO. 10,132,076

United States District Court
Northern District of California

22

along the thickness, gypsum wallboard as disclosed in US 7,908,818." *Id.* at 5–6.  After describing these arguments, the PTAB concluded that a "preponderance of the evidence does not support the Examiner's rationales for modifying Tabata." *Id.* at 7.

These representations foreclose Defendants' proposed construction.  The specialized manufacturing process described by Defendants presumably would result in two gypsum boards that have no edge cladding.  If that is the *only* method for manufacturing the claimed invention, it would be unreasonable to introduce the concept of edge cladding into the claim terms.  Even if that is not the only method, Defendants expressly stated that it is impossible to "pick up a one sided piece of gypsum board and then carefully flip it over and laminate it down on top of another."  PTAB Hearing Transcript at 9–10.  Those statements directly undermine Defendants' proposed construction, which relies on the idea that a traditional gypsum board has edge cladding and that the claimed invention is made by combining two traditional gypsum boards that do not have top liner paper.  Because these statements were "made to convince the examiner that the claimed invention meets the statutory requirement[] of . . . nonobviousness," they are "particularly useful" for determining the scope of the claims.  *Kaken*, 952 F.3d at 1353.  It appears that Defendants convinced the PTAB to reverse the Examiner's obviousness rejection by representing that the claimed invention cannot be made by simply combining traditional gypsum wallboards.

Defendants thus cannot receive a construction which relies on the theory that the claimed invention is made by combining traditional gypsum wallboards.  Without that theory, Defendants have no basis for arguing that "inner surface" must be construed to account for edge cladding.  Accordingly, the prosecution history confirms that Plaintiff's proposed construction is correct.

### 4.  Extrinsic Evidence

Defendants' extrinsic evidence does not alter this conclusion.  The declaration of Defendants' expert, Dr. Pawlak, includes a lengthy description of the process for manufacturing traditional gypsum boards.  *See* Pawlak Decl. at 14–22.  As noted, Defendants rely on this description to support their assertion that all traditional gypsum boards have "edge cladding."  *See*

23

United States District Court
Northern District of California

1   pp. 12–13, *supra*.  The Court makes no determination about the accuracy of this description

2   because, regardless of whether the description is accurate, it does not contradict Defendants' clear

3   representation that the claimed invention cannot be made simply by combining traditional gypsum

4   boards.  Even if it did, expert testimony is "less reliable than the patent and its prosecution history

5   in determining how to read claim terms."  *Phillips*, 415 F.3d at 1317–18.

6       Thus, the Court construes "inner surface" to mean "inner face" and construes "inner unclad

7   surface" to mean "inner unclad face."

8   **B.  Correction of Claim 1 of the '076 Patent**

9       Defendants ask the court to correct claim 1 of the '076 patent, which currently recites:

10  12.  A **method of foil ling** a laminated, sound-attenuating structure, comprising:
    forming a first gypsum board having two surfaces, said two surfaces including a first outer
    paper-clad surface and a first inner unclad surface, wherein the entire inner surface
    of the first gypsum board is unclad;

13  placing a first layer of viscoelastic glue directly on the first inner unclad surface; and

14  placing a second gypsum board proximate to said first layer of viscoelastic glue, said
    second gypsum board having two surfaces, said two surfaces including a second
    outer clad surface and second inner unclad surface, wherein the entire inner surface
    of the second gypsum board is unclad.

17  '076 patent, col. 8:14–27 (emphasis added).  Defendants contend that "method of foil ling," *id.* at

18  col. 8:14, should read "method of forming."  "When a harmless error in a patent is not subject to

19  reasonable debate, it can be corrected by the court, as for other legal documents."  *Hoffer v.

20  Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005).  That is true even if the PTO already has

21  issued a Certificate of Correction that addresses the problem, as it has here.  *Id.*

22      Plaintiff does not contest that the error is obvious and does not dispute that "foil ing"

23  should be "forming."  See Resp. Br. at 18–20.  Instead, Plaintiff asserts that the Court should not

24  allow Defendants to seek retroactive damages for the period during which the claim read "foil

25  ling."  *Id.* at 19.  Plaintiff concedes, however, that the Court need not address that issue now.

26      Accordingly, Defendants are entitled to a judicial correction of claim 1 of the '076 patent

27                                        24

28  Case No. 19-CV-00802-LHK
    ORDER CONSTRUING DISPUTED TERMS OF PATENT NOS. 10,125,492 AND 10,132,076 AND
    CORRECTING TERM OF PATENT NO. 10,132,076

1    that changes the term "method of foil ling" to read "method of forming."

2    **IV.**    **CONCLUSION**

3          For the foregoing reasons, the Court construes the disputed claim term "inner surface"

4    from the '492 and '076 patents as "inner face."  The Court also corrects the term "method of foil

5    ling" from the '076 patent to read "method of forming."

6    **IT IS SO ORDERED.**

7

8    Dated: September 16, 2021

9                              *Lucy H. Koh*

10                          LUCY H. KOH
                         United States District Judge

*(left margin, vertical text)* United States District Court
Northern District of California

25