1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CERTAINTEED GYPSUM, INC., | Case No. 19-CV-00802-LHK |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE** |
| v. | Re: Dkt. No. 127 |
| PACIFIC COAST BUILDING PRODUCTS, INC., et al., | |
| Defendants. | |

Plaintiff CertainTeed Gypsum, Inc. ("CertainTeed") brings the instant case seeking a declaratory judgment that two patents owned by Defendant Pacific Coast and Building Products Inc. ("Pacific Coast") are unenforceable due to inequitable conduct and that CertainTeed has not infringed those patents.  ECF No. 126 ("FAC").  Before the Court is Defendant Pacific Coast and Defendant PABCO Building Products, LLC's ("PABCO") (collectively, "Defendants") motion to dismiss certain inequitable conduct claims in CertainTeed's First Amended Complaint ("FAC").  ECF No. 127.[1]  Having considered the parties' submissions, the relevant law, and the record in

---

[1] Defendants' motion to dismiss contains a notice of motion that is separately paginated from the points and authorities in support of the motion.  Civil Local Rule 7-2(b) requires that the notice of motion and the points and authorities in support of the motion must be contained in one document with the same pagination for a total of no more than 25 pages.  *See* Civ. Loc. R. 7-2(b).

this case, the Court GRANTS Defendants' motion to dismiss with prejudice.

## I. BACKGROUND

This case arises from a series of disputes between the parties involving U.S. Patent Nos. 10,125,492 ("the '492 patent"), 10,123,076 ("the '076 patent"), and 9,388,568 ("the '568 patent"). For the instant motion to dismiss, the key issue is whether Defendants engaged in inequitable conduct during the prosecution of the '492 and '076 patents. Below, the Court describes in turn: (1) the parties and the patents; (2) the parties' disputes in the Northern District of California involving the '568 patent; (3) the prosecution history of the '492 and '076 patents; (4) the parties' dispute in the Western District of Arkansas involving the '492 and '076 patents; and (5) the procedural history of the instant case.

### A. The Parties and the Patents

Plaintiff CertainTeed is a Delaware corporation with its corporate headquarters in Pennsylvania. FAC ¶ 15. CertainTeed manufactures and sells gypsum wallboard products, including a product called the "SilentFX QuickCut." ECF No. 87 ¶ 19.

Defendant Pacific Coast is a California corporation with its principal place of business in California. FAC ¶ 11. Pacific Coast is the owner of the '568, '492 and '076 patents. *Id.* ¶¶ 1, 18. Defendant PABCO is a Nevada limited liability company with its principal place of business in California. *Id.* ¶ 17. PABCO is the exclusive licensee of the '492 and '076 patents. *Id.* ¶ 19. PABCO manufactures and sells gypsum wallboard products. *Id.* ¶ 25.

Each of the '568 patent, the '492 patent, and the '076 patent is titled "Acoustical Sound Proofing Material with Improved Fracture Characteristics and Methods for Manufacturing Same." As discussed further below, the '492 and '076 patents are children of the '568 patent. Thus, the three patents have identical figures, nearly identical specifications, and similar claims.

### B. The Parties' Disputes in the Northern District of California Involving the '568 Patent

#### 1. The 2017 Case Involving the '568 Patent

On March 3, 2017, Pacific Coast filed an action against "CertainTeed Corporation" in this Court ("the 2017 N.D. Cal Action") asserting that the SilentFX QuickCut product infringed at

Case No. 19-CV-00802-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

least claim 21 of the '568 patent.  FAC ¶ 31.  Pacific Coast was represented in the action by attorneys from the law firm Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin").  *Id.* ¶ 6.  Because Pacific Coast had intended to sue Plaintiff CertainTeed Gypsum, Inc. ("CertainTeed"), Pacific Coast filed an amended complaint on April 21, 2017 which "remov[ed] CertainTeed Corporation as a defendant and add[ed] CertainTeed Gypsum, Inc. as a named defendant in its place."  *Id.* ¶ 32.

On May 5, 2017, CertainTeed filed an answer and counterclaimed that all claims of the '568 patent which use the term "scored flexural strength" are invalid for indefiniteness.  *Id.* ¶ 33. On July 28, 2017, CertainTeed sent Pacific Coast a letter explaining why the term "scored flexural strength" is indefinite.  *Id.* ¶ 34.  On August 18, 2017, Jason Mueller of Sheppard Mullin responded in a letter arguing that the term "scored flexural strength" is not indefinite because the specification of the '568 patent explains how to perform a "flexural strength test."  *Id.* ¶ 35.

On August 18, 2017, CertainTeed filed an amended answer.  *Id.*  The amended answer reasserted CertainTeed's indefiniteness counterclaim.  *Id.*  The amended answer also added a counterclaim that claim 21 of the '568 patent is anticipated or rendered obvious by Unexamined Japanese Patent Application Publication No. 2004-42557 ("Hirata").  *Id.* ¶¶ 3, 35.  On August 30, 2017, CertainTeed served invalidity contentions.  *Id.* ¶ 36.  On September 12, 2017, CertainTeed's representatives met with Pacific Coast's representatives, including Mr. Mueller, to discuss CertainTeed's invalidity contentions.  *Id.* ¶ 37.

On October 3, 2017, Pacific Coast dismissed its infringement claims without prejudice and CertainTeed dismissed its counterclaims without prejudice.  *Id.* ¶ 39.

**2.  The 2018 Case Involving the '568 Patent**

On January 16, 2018, Pacific Coast filed an action against CertainTeed in this Court ("the 2018 N.D. Cal Action") asserting, as in the 2017 N.D. Cal. Action, that the SilentFX QuickCut product infringed at least claim 21 of the '568 patent.  FAC ¶ 40.  Pacific Coast was represented by attorneys from Sheppard Mullin, including Mr. Mueller and Galyn Gafford.  *Id.* ¶¶ 43, 50.

On February 13, 2018, CertainTeed filed an answer and counterclaims.  *Id.* ¶ 151.  As in

Case No. 19-CV-00802-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    the 2017 N.D. Cal. Action, CertainTeed counterclaimed that all claims of the '568 patent that use

2    the term "scored flexural strength" are invalid for indefiniteness and that claim 21 of the '568

3    patent is anticipated or rendered obvious by Hirata.  *Id.* ¶ 41.

4         On June 18, 2018, CertainTeed served invalidity contentions.  *Id.* ¶ 46.  CertainTeed's

5    invalidity contentions "detailed how the 'scored flexural strength' terms are indefinite."  *Id.*

6    Additionally, the contentions "explained, on a limitation-by-limitation basis, that claim 21 of the

7    '568 patent is invalid for anticipation and/or obviousness based on Hirata."  *Id.*

8         On August 17, 2018, CertainTeed and Pacific Coast filed a joint claim construction

9    statement which included a declaration by CertainTeed's expert Dr. Paul Miller.  *Id.* ¶ 48.  Dr.

10   Miller's declaration explained why, based on different test methods, the term "scored flexural

11   strength" is indefinite.  *Id.*  On September 17, 2018, Mr. Gafford deposed Dr. Miller.  *Id.* ¶ 55.

12        On November 29, 2018, the Court held a claim construction hearing to address, among

13   other issues, the meaning of the term "scored flexural strength."  *Id.* ¶ 64.  The same day, the

14   Court issued a claim construction order holding that the term "scored flexural strength," as used in

15   the '568 patent, is indefinite.  *See Pac. Coast Bldg. Prod., Inc. v. CertainTeed Gypsum, Inc.*, No.

16   18-CV-00346-LHK, 2018 WL 6268880, at *12 (N.D. Cal. Nov. 29, 2018).

17        On January 9, 2019, the Court entered a stipulated judgment holding that claim 21 of the

18   '568 patent is invalid for indefiniteness.  FAC ¶ 65.  On February 11, 2019, Pacific Coast appealed

19   the Court's invalidity determination to the Federal Circuit.  *See Pac. Coast Bldg. Prod., Inc. v.*

20   *CertainTeed Gypsum, Inc.*, No. 19-1524, ECF No. 1 (Fed. Cir. June 30, 2020).  On June 30, 2020,

21   the Federal Circuit affirmed the Court's invalidity determination.  *Pac. Coast Bldg. Prod., Inc. v.*

22   *CertainTeed Gypsum, Inc.*, 816 F. App'x 454, 455 (Fed. Cir. 2020).

23   **C.  Prosecution History of the '492 and '076 Patents**

24        The applications for the '492 and '076 patents were filed on March 1, 2013.  Each of the

25   '492 and '076 patents lists Sheppard Mullin as the "Attorney, Agent, or Firm" responsible for

26   prosecuting the patent.  The application for the '492 patent was a continuation of the application

27   that became the '568 patent.  The application for the '076 patent was a divisional of the

28

United States District Court
Northern District of California

4

application that became the '568 patent.

CertainTeed alleges that Mr. Gafford and Mr. Mueller were responsible for prosecuting the '492 and '076 patents.  FAC ¶¶ 72, 76.  Specifically, CertainTeed alleges that each of Mr. Gafford and Mr. Mueller "was listed as an 'Attorney/Agent' authorized to communicate with the Patent Office on Pacific Coast's behalf regarding prosecution of the '492 and '076 patents."  *Id.* ¶¶ 73, 78.  Similarly, "file-folder covers for the '492 and '076 patent prosecution files produced by Pacific Coast" list both Mr. Gafford's and Mr. Mueller's initials.  *Id.* ¶¶ 133–34.

CertainTeed's allegations regarding Mr. Gafford show that Mr. Gafford had primary responsibility for communicating with the U.S. Patent and Trademark Office ("PTO") regarding the prosecution of the '492 and '076 patents.  Mr. Gafford "signed responses to office actions and other documents in the '492 patent prosecution . . . at least as early as October 1, 2013" and "in the '076 patent prosecution . . . at least as early as October 2, 2013."  *Id.* ¶¶ 83–84.

By contrast, CertainTeed's allegations regarding Mr. Mueller indicate that Mr. Mueller had a managerial role in the prosecution of the '492 and '076 patents.  Mr. Mueller "was the lead partner at [Sheppard Mullin] responsible for Pacific Coast as a client during prosecution of the '492 and '076 patents."  *Id.* ¶ 77.  Additionally, CertainTeed alleges, "[o]n information and belief," that Mr. Mueller "was Sheppard Mullin's billing attorney and was responsible for approving all time billed to Pacific Coast by Sheppard Mullin for work on the prosecution of the then-pending applications for the '492 and '076" patents.  *Id.* ¶ 88.

CertainTeed also points out that Mr. Mueller executed assignments of the applications for the '492 and '076 patents.  On February 17, 2014, Mr. Mueller submitted to the PTO assignments of the applications for the '492 and '076 patents from PABCO to Pacific Coast.  *See id.* ¶¶ 79–80.  On May 2, 2014, Mr. Mueller submitted to the PTO assignments of the applications for the '492 and '076 patents from Serious Energy, Inc. to PABCO.  *See id.* ¶¶ 81–82.

On August 22, 2014, an Examiner of the PTO rejected the application for the '076 patent based on findings of obviousness and non-statutory double patenting.  Final Action dated August 22, 2014, in U.S. App No. 13/783,179.  On August 25, 2014, the Examiner rejected the application

Case No. 19-CV-00802-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    for the '492 patent for the same reasons.  Final Action dated August 25, 2014, in U.S. App No.

2    13/783,165.

3           Pacific Coast appealed these rejections to the Patent Trial and Appeal Board ("PTAB") of

4    the PTO.  On May 22, 2018, the PTAB held a hearing regarding this appeal.  FAC ¶ 85.  Mr.

5    Gafford argued the appeal for Pacific Coast.  *Id.*  Mr. Gafford did not inform the PTAB about the

6    2018 N.D. Cal. Action or any of the arguments that had been made in that action.  *Id.*

7           On June 11, 2018, the PTAB reversed the Examiner's obviousness rejections and affirmed

8    the Examiner's double patenting rejections.  Decision on Appeal dated June 11, 2018, at 11, in

9    U.S. App No. 13/783,165; Decision on Appeal dated June 11, 2018, at 11, in U.S. App No.

10   13/783,179.

11          On July 19, 2018, Mr. Gafford filed with the PTO Requests for Continued Examination of

12   the applications for the '492 and '076 patents and Terminal Disclaimers of the patents that had

13   caused the double patenting rejections.  *See* FAC ¶ 94.  Mr. Gafford's filings did not mention the

14   2018 N.D. Cal. Action or any of the arguments that had been made in that action.  *Id.* ¶ 94.

15          On August 29, 2018, Mr. Gafford filed with the PTO an Amendment and Response in the

16   application for the '492 patent.  *Id.* ¶ 96.  The Amendment and Response did not mention the 2018

17   N.D. Cal. Action or any of the arguments that had been made in that action.  *Id.*

18           On September 12, 2018, the PTO issued a notice of allowance for the '076 patent.  *Id.*

19   ¶ 98.  On September 13, 2018, the PTO issued a notice of allowance for the '492 patent.  *Id.* ¶ 100.

20   On November 13, 2018, '492 patent issued.  *Id.* ¶ 104.  On November 20, 2018, the '076 patent

21   issued.  *Id.* ¶ 106.

22          **D.   The Parties' Dispute in the Western District of Arkansas Involving the '492 and '076**
            **Patents**

23

24          On December 11, 2018, Pacific Coast filed an action against CertainTeed Gypsum

25   Manufacturing, Inc., Plaintiff CertainTeed's corporate sibling, in the Western District of Arkansas

26   asserting that the SilentFX QuickCut product infringed the '492 and '076 patents.  FAC ¶ 109.

27   Mr. Mueller and Mr. Gafford represented Pacific Coast in the action.  *Id.*

28

Case No. 19-CV-00802-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

On February 15, 2019, CertainTeed Gypsum Manufacturing filed a motion to stay the case in favor of the instant case which, as discussed further below, was filed on February 14, 2019.  *Id.*  On August 27, 2019, the Western District of Arkansas stayed the case pending resolution of the instant case.  *See id.*; *Pac. Coast Bldg. Prods, Inc. v. CertainTeed Gypsum Mfg., Inc.*, Case No. 4:18-cv-04165-SOH, ECF No. 60 (W.D. Ark. Aug. 27, 2019).

**E.  Procedural History of the Instant Case**

On February 14, 2019, CertainTeed filed a complaint asserting four declaratory judgment claims: (1) declaratory judgment that the '492 patent is unenforceable due to inequitable conduct; (2) declaratory judgment that the '076 patent is unenforceable due to inequitable conduct; (3) declaratory judgment that the SilentFX QuickCut product does not infringe '492 patent; and (4) declaratory judgment that the SilentFX QuickCut product does not infringe the '076 patent.  ECF No. 1 ¶¶ 116–43.  To support the inequitable conduct claims, CertainTeed alleged that Mr. Mueller and Mr. Gafford owed a duty of candor to the PTO during the prosecution of the '492 and '076 patents.  *Id.* ¶ 109.  According to CertainTeed, Mr. Mueller and Mr. Gafford breached that duty by failing to inform the PTO about the 2017 N.D. Cal. Action and the 2018 N.D. Cal Action; about Dr. Miller's declaration supporting CertainTeed's argument that the term "scored flexural strength" is indefinite as used in the '568 patent ("the Miller Declaration"); or about CertainTeed's invalidity contentions arguing that Hirata anticipates or renders obvious claim 21 of the '568 patent ("the Hirata invalidity contentions").  *Id.* ¶¶ 110–14.

On March 15, 2019, Defendants filed a motion to dismiss.  ECF No. 29.  Defendants' motion argued: (1) the entire case should be dismissed because the Court lacked subject matter jurisdiction; (2) the inequitable conduct claims regarding Mr. Mueller should be dismissed because CertainTeed did not adequately allege that Mr. Mueller owed a duty of candor to the PTO; (3) the inequitable conduct claims should all be dismissed because CertainTeed did not adequately allege materiality and intent to deceive; and (4) that the "first-to-file" rule required the Court to stay the case in favor of Pacific Coast's action in the Western District of Arkansas.  *See id.*  In connection with their motion to dismiss, Defendants filed a request for judicial notice.  ECF

Case No. 19-CV-00802-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

No. 29-1.

On May 10, 2019, CertainTeed filed an opposition.  ECF No. 41.  In connection with its opposition, CertainTeed filed a request for judicial notice.  ECF No. 42.

On May 23, 2019, the Court stayed the instant case pending Pacific Coast's appeal of the Court's invalidity determination in the 2018 N.D. Cal. Action.  ECF No. 46.  On August 11, 2020, CertainTeed informed the Court that the Federal Circuit had affirmed the Court's invalidity determination and that the Federal Circuit's mandate had issued.  ECF Nos. 49, 50.

On October 2, 2020, the Court reopened the case.  ECF No. 53.  On October 14, 2020, Defendants filed a reply in support of their motion to dismiss.  ECF No. 56.

On January 11, 2021, Defendants answered the complaint and asserted counterclaims. ECF No. 68.  Defendants asserted that CertainTeed's SilentFX QuickCut product directly infringes at least claim 1 of the '492 patent and at least claim 1 of the '076 patent, both literally and under the doctrine of equivalents.  ECF No. 68, Counterclaims ¶¶ 24–30, 40–46.  Defendants also asserted that CertainTeed has indirectly infringed the same claims by inducing its business partners and customers to make and use the SilentFX QuickCut product.  *Id.* ¶¶ 31–39, 47–55. On February 1, 2021, Defendants amended their answer and counterclaims.  ECF No. 82.

On February 3, 2021, the parties filed a joint case management statement which informed the Court that, in light of Defendants' counterclaims asserting infringement of the '492 and '076 patents, Defendants no longer disputed that the Court has subject matter jurisdiction over CertainTeed's declaratory judgment claims.  ECF No. 83 at 2.

On February 16, 2021, CertainTeed answered Defendants' counterclaims and brought its own counterclaims seeking a declaratory judgment that the asserted claims of the '492 and '076 patents are invalid for failing to meet the statutory requirement of nonobviousness.  ECF No. 87. CertainTeed also sought a declaratory judgment that several unasserted claims of both patents are indefinite based on the Federal Circuit's decision regarding the '581 patent.  *Id.*

On February 22, 2021, the parties filed a notice informing the Court that the Western District of Arkansas had stayed Pacific Coast's action asserting the '492 and '076 patents.  ECF

8

Case No. 19-CV-00802-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1   No. 89.  Accordingly, the parties stated, only Section IV.D of Defendants' motion to dismiss

2   (regarding CertainTeed's inequitable conduct claims) remained at issue.  *Id.*

3       On March 9, 2021, Defendants moved to dismiss CertainTeed's counterclaims regarding

4   the invalidity of unasserted claims.  ECF No. 93.  Defendants argued that the Court did not have

5   subject matter jurisdiction to consider those counterclaims.  *See id.*  On March 23, 2021,

6   CertainTeed opposed Defendants' motion to dismiss.  ECF No. 97.  On March 30, 2021,

7   Defendants filed a reply in support of their motion to dismiss.  ECF No. 98.

8       On April 8, 2021, CertainTeed amended its invalidity counterclaims as not to include any

9   counterclaims regarding the unasserted claims of the '492 and '076 patents.  ECF No. 101.

10      On April 14, 2021, the Court granted Defendants' motion to dismiss CertainTeed's

11  inequitable conduct claims without prejudice.  *See CertainTeed Gypsum, Inc. v. Pac. Coast Bldg.*

12  *Prod., Inc.*, No. 19-CV-00802-LHK, 2021 WL 1405477 (N.D. Cal. Apr. 14, 2021).  The Court

13  held that CertainTeed had not adequately alleged that Mr. Mueller owed a duty of candor to the

14  PTO.  *See id.* at *6–7.  Additionally, the Court held that CertainTeed did not adequately allege

15  materiality and intent to deceive.  *Id.* at *7–10.

16      The same day, Defendants withdrew their motion to dismiss CertainTeed' invalidity

17  counterclaims.  ECF No. 102.  On April 22, 2021, Defendants answered CertainTeed's amended

18  counterclaims.  ECF No. 105.

19      On May 14, 2021, CertainTeed filed the FAC.  ECF Nos. 113 (redacted), 126 (unredacted).

20  On May 28, 2021, Defendants moved to dismiss the FAC.  ECF No. 127 ("Mot.").  On June 18,

21  2021, CertainTeed opposed Defendants' motion to dismiss.  ECF No. 141 ("Opp.").  On July 2,

22  2021, Defendants filed a reply.  ECF No. 149 ("Reply").

23  **II.    LEGAL STANDARD**

24      **A.  Motion to Dismiss Under Rule 12(b)(6)**

25      "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

26  accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

27  662, 678 (2009) (internal citation and quotation marks removed).  "A claim has facial plausibility

28

1    when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

2    the defendant is liable for the misconduct alleged." *Id.*

3         However, where a party alleges a claim based on "fraud or mistake, [the] party must state

4    with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The

5    pleadings must include "an account of the time, place, and specific content of the false

6    representations" at issue. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal

7    quotation marks omitted).

8         Although inequitable conduct is "a broader concept than fraud," inequitable conduct claims

9    "'must be pled with particularity' under Rule 9(b)." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575

10   F.3d 1312, 1326 (Fed. Cir. 2009) (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover*

11   *Resources, Inc. v. Mega Sys, LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)).   Because inequitable

12   conduct claims arise when a party has intentionally deceived the PTO by misrepresenting or

13   omitting a material fact, "the pleading must identify the specific who, what, when, where, and how

14   of the material misrepresentation or omission committed before the PTO. *Id.* at 1328.

15   Additionally, the pleadings must include "sufficient allegations of underlying facts from which a

16   court may reasonably infer that [the party] (1) knew of the withheld material information or of the

17   falsity of the material misrepresentation, and (2) withheld or misrepresented this information with

18   a specific intent to deceive the PTO." *Id.* at 1328–29.

19        **B. Leave to Amend**

20        Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

21   granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

22   decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d

23   1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted).

24   Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the

25   opposing party, cause undue delay, or be futile, or if the moving party has acted in bad

26   faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

27

28

Case No. 19-CV-00802-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

## III.   DISCUSSION

CertainTeed's inequitable conduct claims turn on two sets of allegations.  First, CertainTeed alleges that each of Mr. Mueller and Mr. Gafford owed a duty of candor to the PTO during the prosecution of the '492 and '076 patents.  *See* ECF No. 126 ¶¶ 118–43.  Second, CertainTeed alleges that each of Mr. Mueller and Mr. Gafford breached his duty of candor by failing to inform the PTO about: (1) the 2018 N.D. Cal. Action; (2) the Miller Declaration; and (3) the Hirata invalidity contentions.  *See* ECF No. 116 ¶¶ 144–229.

Defendants do not move to dismiss CertainTeed's inequitable conduct claims entirely. Defendants do not dispute that Mr. Gafford owed a duty of candor to the PTO.  Additionally, Defendants do not dispute that the FAC adequately alleges that the Miller Declaration should have been disclosed to the PTO.

Instead, Defendants seek to dismiss three aspects of CertainTeed's inequitable conduct claims.  First, Defendants contend that CertainTeed has not adequately alleged that Mr. Mueller owed a duty of candor to the PTO.  *See* Mot. at 5–10.  Second, Defendants contend that CertainTeed has not adequately alleged that the Hirata invalidity contentions should have been disclosed to the PTO.  *See id.* at 10–17.  Third, Defendants contend that CertainTeed has not adequately alleged that the existence of the 2018 N.D. Cal. Action should have been disclosed to the PTO.  *See id.* at 17–18.  The Court begins by addressing Defendants' argument regarding Mr. Mueller.  The Court then addresses Defendants' arguments about the Hirata invalidity contentions and the 2018 N.D. Cal. Action.

### A.   CertainTeed Has Not Adequately Alleged that Jason Mueller Owed a Duty of Candor to the U.S. Patent and Trademark Office

Defendants contend that CertainTeed's inequitable conduct claims may not rely on Mr. Mueller's conduct because CertainTeed has not adequately alleged that Mr. Mueller owed a duty of candor to the PTO.  Mot. at 5–10.  For the reasons below, the Court agrees with Defendants.

"Whether inequitable conduct has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law."  *Exergen*, 575 F.3d at 1318 (citing *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed.Cir.2007)).

11

United States District Court
Northern District of California

1        An inequitable conduct claim arises when an individual who represents a patent applicant

2  breaches the duty of candor owed to the PTO.  "PTO Rule 56, codified at 37 C.F.R. § 1.56,

3  imposes on all individuals associated with the filing and prosecution of a patent application a duty

4  of candor and good faith in dealing with the PTO during the period of examination of a patent

5  application." *Avid Identification Sys., Inc. v. Crystal Imp. Corp.*, 603 F.3d 967, 973 (Fed. Cir.

6  2010) (citing 37 C.F.R. § 1.56(a)).  In turn, "Rule 56 defines 'individual[s] associated with the

7  filing or prosecution of a patent application' as (1) each named inventor, (2) each attorney or agent

8  that prepares or prosecutes the application, and (3) every other person who is substantively

9  involved in the preparation or prosecution of the application and who is associated with the

10  inventor or assignee." *Id.* (citing 37 C.F.R. § 1.56(c)).  If one of these individuals "fails to comply

11  with his duty of candor, then that individual's misconduct is chargeable to the applicant for the

12  patent, and the applicant's patent is held unenforceable." *Id.*

13        Thus, to state an inequitable conduct claim, a plaintiff must identify a specific individual

14  who was "substantively involved in the preparation or prosecution of the application."  *See id.*

15  The Federal Circuit has "read 'substantively involved' to mean that the involvement relates to the

16  content of the application or decisions related thereto." *Id.* at 974.  Thus, performing

17  "administrative or secretarial" work for a prosecution does not give rise to a duty of candor.  *Id.*

18        In the Court's order dismissing the original complaint, the Court held that CertainTeed

19  could not rely on Mr. Mueller's conduct to state inequitable conduct claims because the complaint

20  contained almost no details about Mr. Mueller's role in the prosecution of the '492 and '076

21  patents.  Indeed, CertainTeed relied exclusively on the fact that Mr. Mueller "is a registered Patent

22  Attorney with the [PTO]" and "is listed as an 'Attorney/Agent' for the patent applications that

23  issued as the '492 patent . . . and the '076 patent." ECF No. 1 ¶¶ 100–01.  The Court held that

24  these allegations were insufficient to establish that Mr. Mueller fell into any of the categories of

25  individuals listed by 37 C.F.R. § 1.56(c).  *CertainTeed Gypsum*, 2021 WL 1405477, at *6.  By

26  contrast, the Court explained, the complaint made clear that Mr. Gafford was "substantively

27  involved in the preparation or prosecution of the action" by alleging that he "sign[ed] responses to

28

12

1   office actions and other documents." ECF No. 1 ¶¶ 106–07. Because CertainTeed failed to allege

2   that Mr. Mueller "participated in any of these activities," CertainTeed failed to allege that Mr.

3   Mueller owed a duty of candor to the PTO. *CertainTeed Gypsum*, 2021 WL 1405477, at *6.

4        The FAC provides additional details about Mr. Mueller's role in the prosecution of the

5   '492 and '076 patents. Specifically, the FAC alleges that Mr. Mueller "was the lead partner at

6   [Sheppard Mullin] responsible for Pacific Coast as a client; "[o]n information and belief," that Mr.

7   Mueller "was the billing partner responsible for the prosecution of the '492 and '076 patents; that

8   Mr. Mueller submitted to the PTO assignments of the applications for the '492 and '076 patents;

9   and that Mr. Mueller's initials were listed on several "prosecution-related folders for the '492 and

10  '076 patents." ECF Nos. 126 ¶¶ 77, 79–82, 88, 133–34.

11       However, these allegations do not show with the specificity required by Rule 9(b) that Mr.

12  Mueller was "*substantively* involved in the preparation or prosecution of the application[s]." *Avid*

13  *Identification*, 603 F.3d at 973 (emphasis added). Under Rule 9(b), "the pleading must identify

14  the specific who, what, when, where, and how" of the circumstances surrounding the alleged

15  inequitable conduct. *Exergen*, 575 F.3d at 1328. The FAC fails to identify any specific actions

16  performed by Mr. Mueller that involve the development of the "content of the application or

17  decisions related thereto." *Avid Identification*, 603 F.3d at 974. Instead, the FAC identifies the

18  following actions: managing client relations, reviewing bills, and submitting application

19  assignments. Although these actions are not merely "administrative or secretarial" in nature, they

20  do not show that Mr. Mueller was involved in developing substantive arguments related to

21  patentability. Similarly, although the fact that Mr. Mueller's initials appeared on several

22  "prosecution-related folders" indicates that Mr. Mueller performed work related to the

23  prosecution, that fact provides no information about the *type* of work that Mr. Mueller performed.

24  Under Rule 9(b), which requires specific allegations about the circumstances surrounding alleged

25  inequitable conduct, allegations that Mr. Mueller was involved with the prosecution in a general

26  way are insufficient. *Exergen*, 575 F.3d at 1328.

27       Moreover, holding Mr. Mueller liable for inequitable conduct would be inconsistent with

28

13

United States District Court
Northern District of California

the Federal Circuit's guidance that inequitable conduct liability should be narrowly construed.  In 2010, the en banc Federal Circuit noted that an expansive interpretation of the inequitable conduct doctrine had caused a significant increase in inequitable conduct claims.  *See Therasense*, 649 F.3d at 1287–89.  In turn, this increase in claims had burdened the patent system by incentivizing patent prosecutors to submit excessive prior art references.  *Id.* at 1289.  Relying on these observations, the Federal Circuit significantly raised the bar for finding inequitable conduct.  *Id.* at 1290.  Thus, although the Federal Circuit has not provided a precise test for determining whether an individual was "substantively involved" in a prosecution, the Federal Circuit has provided a clear principle that courts should interpret the inequitable conduct doctrine narrowly.  This principle weighs against holding Mr. Mueller responsible for inequitable conduct based on allegations that fail to identify any particular substantive actions taken by Mr. Mueller with respect to the prosecution.

CertainTeed's arguments to the contrary are unpersuasive.  CertainTeed contends that, "as lead litigation counsel, billing partner, and relationship partner for all litigation and prosecution matters, Mr. Mueller must have been substantively involved in the prosecution of the patents-in-suit because this prosecution was directly related to his pending case regarding the '568 patent."  Opp. at 7.  Additionally, CertainTeed contends that "Mr. Mueller must have been substantively involved in the strategy behind arguments and remarks made to the Patent Office . . . because, as continuations of the '568 patent, their contents and prosecution histories were relevant to the scope of the '568 patent and the concurrent litigation."  *Id.*

However, as Defendants point out, CertainTeed "requested and obtained a prosecution bar in the 2018 N.D. Cal. Action" which "prohibit[ed] Mr. Mueller and other Pacific Coast attorneys who ha[d] access to CertainTeed's highly confidential technical documents from participating in 'Prosecution/Acquisition Activity.'"  Mot. at 10.  Although the prosecution bar was not in place for the entirety of the 2018 N.D. Cal. Action, this fact directly undermines CertainTeed's argument that Mr. Mueller *must have* been substantively involved in the prosecution because he was involved in the 2018 N.D. Cal. Action.

14

United States District Court
Northern District of California

Thus, the Court concludes that CertainTeed has failed to allege that Mr. Mueller owed a duty of candor to the PTO.

**B. CertainTeed's Allegations Regarding the Hirata Invalidity Contentions and the 2018 N.D. Cal. Action Are Insufficient to State Inequitable Conduct Claims**

Defendants contend that CertainTeed has not adequately alleged that either the Hirata invalidity contentions or the existence of the 2018 N.D. Cal. Action should have been disclosed to the PTO. Mot. at 10–18. For the reasons below, the Court agrees with Defendants.

As noted, "[w]hether inequitable conduct has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law." *Exergen*, 575 F.3d at 1318 (citing *Cent. Admixture Pharmacy Servs.*, 482 F.3d at 1356).

After identifying an individual who owed a duty of candor, a plaintiff must allege two elements to state an inequitable conduct claim: "(1) [the individual] made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false information; and (2) the individual did so with a specific intent to deceive the PTO." *Id.* at 1327 n.3. "[T]he materiality required to establish inequitable conduct is but-for materiality." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011). Thus, "in assessing the materiality of [information], the court must determine whether the PTO would have allowed the claim if it had been aware of the [information]." *Id.* "However, a withheld otherwise material [piece of information] is *not* material for the purposes of inequitable conduct if it is merely cumulative to that information considered by the examiner." *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1319 (Fed. Cir. 2006) (emphasis in original).

Defendants argue that the Hirata invalidity contentions were cumulative to the material considered by the PTO and that CertainTeed has not adequately alleged a specific intent to deceive the PTO with respect to the Hirata invalidity contentions. *See* Mot. at 10–17. Additionally, Defendants argue that knowledge of the 2018 N.D. Cal. Action would not have been material. *Id.* at 17–18. The Court addresses these arguments in turn.

**1. CertainTeed Fails to Allege that the Hirata Invalidity Contentions Would Not Have Been Cumulative of the Information Already Before the PTO**

Case No. 19-CV-00802-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    The Hirata invalidity contentions "explained, on a limitation-by-limitation basis, that claim

2    21 of the '568 patent is invalid for anticipation and/or obviousness based on Hirata."  FAC ¶ 46.

3    Defendants contend that the Hirata invalidity contentions would have been cumulative of the

4    information already before the PTO because "the Hirata reference" was itself "disclosed to the

5    PTO."  Mot. at 11.  The Court agrees with Defendants.  Accordingly, the Court need not address

6    Defendants' argument that CertainTeed has not adequately alleged that Mr. Gafford had an intent

7    to deceive the PTO regarding the Hirata invalidity contentions.  Mot. at 11–17.

8    As discussed, an applicant for a patent has no duty to disclose cumulative information.

9    *Digital Control*, 437 F.3d at 1319.  Thus, a plaintiff who brings an inequitable conduct claim must

10   allege with particularity why certain omitted information would have added value to the

11   information already before the PTO.  For example, if a plaintiff brings an inequitable conduct

12   claim based on an allegation that a patent applicant withheld a prior art reference, the plaintiff

13   must "identify the particular claim limitations, or combination of claim limitations, that are

14   supposedly absent from the information of record."  *Exergen*, 575 F.3d at 1329.

15   In the Court's order dismissing CertainTeed's original complaint, the Court held that "any

16   contentions regarding Hirata necessarily would have been cumulative of Hirata itself."  *See*

17   *CertainTeed Gypsum*, 2021 WL 1405477, at *8.  Indeed, the original complaint made no effort to

18   explain why the Hirata invalidity contentions were non-cumulative.  Instead, the original

19   complaint merely alleged that the Hirata invalidity contentions "are material to at least claim 1 of

20   the '492 and '076 patents, as each claim is very similar to claim 21 of the '568 patent."  ECF No.

21   1 ¶ 89.

22   CertainTeed argues that, in contrast to the original complaint, the FAC specifically alleges

23   that the Hirata invalidity contentions "provide a limitation-by-limitation mapping that shows

24   exactly why the very similar claims of the '568 patent are invalid and additional technical

25   information, none of which was included, submitted, or otherwise considered by the Patent

26   Office."  Opp. at 16.  For example, the FAC alleges that the Hirata invalidity contentions

27   "demonstrate that the Hirata prior art reference discloses the following requirement in claim 1 of

Case No. 19-CV-00802-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

28

1   the '492 patent: 'a first gypsum board having two surfaces, said two surfaces including a first

2   outer clad surface.'"  FAC ¶ 203.

3          Additionally, CertainTeed argues that the FAC provides a "concrete example of non-

4   cumulativeness."  Opp. at 16.  Specifically, the FAC alleges that Pacific Coast filed continuations

5   of the applications that issued as the '492 and '076 patents and that the claims of these

6   continuation applications largely resembled the claims of the '492 and '076 patents.  FAC ¶¶ 191–

7   94.  According to the FAC, Pacific Coast submitted the Hirata invalidity contentions to the PTO

8   during the prosecution of these continuation applications, and the PTO rejected the applications

9   "based on the Hirata prior art reference."  *See id.* ¶¶ 191–97.  According to CertainTeed, these

10  allegations show that the PTO would have analyzed the applications for the '492 and '076 patents

11  differently if the PTO had access to the Hirata invalidity contentions.  Opp. at 16.

12         Although the FAC makes plausible that the PTO's analysis may have been different if the

13  PTO had the Hirata invalidity contentions, CertainTeed provides no reason for the Court to revisit

14  its conclusion that "any contentions regarding Hirata necessarily would have been cumulative of

15  Hirata itself."  *See CertainTeed Gypsum*, 2021 WL 1405477, at *8.  As discussed, "the materiality

16  required to establish inequitable conduct is but-for materiality."  *Therasense*, 649 F.3d at 1291.

17  Under this standard, it is not enough for a plaintiff to allege that a certain piece of information

18  would have aided the PTO or would have weighed against patentability.  Instead, the plaintiff

19  must plausibly allege that "the PTO *would not have allowed* a claim had it been aware" of the

20  information.  *Id.* (emphasis added).  Where the omitted information is a specific argument about a

21  prior art reference and that prior art reference already is in front of the PTO, it is not plausible that

22  the omitted information would have been "but-for material."

23         Thus, the Court concludes that the Hirata invalidity contentions would have been

24  cumulative of the information already before the PTO.

25         **2.  CertainTeed Fails to Allege that Knowledge of Pacific Coast's Prior Action Would Have Been Material and Non-Cumulative**

26
27  CertainTeed alleges that knowledge of the 2018 N.D. Cal. Action would have been

28

Case No. 19-CV-00802-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

material to the prosecution of the '492 and '076 patents.  FAC ¶¶ 217–29.  Defendants contend that such information would have been cumulative because the only specific filings from the 2018 N.D. Cal. Action that CertainTeed identifies as material are the Miller Declaration and the Hirata invalidity contentions.  Mot. at 17.  The Court agrees with Defendants.

In the Court's order dismissing CertainTeed's original complaint, the Court concluded that CertainTeed's allegations regarding the 2018 N.D. Cal. Action were insufficiently specific to meet the requirements of Rule 9(b).  The Court explained that CertainTeed "fail[ed] to allege why the PTO would not have allowed the claims for [the '492 and '076 patents] had it been aware of the existence of the N.D. Cal. Actions, as opposed to specific filings or documents from those lawsuits." *CertainTeed Gypsum*, 2021 WL 1405477, at \*9.  Instead, the original complaint made repeated references to "filings, contentions, and correspondence" without "stat[ing] with specificity which 'filings, contentions, and correspondence' . . . Defendant had a duty to disclose to the PTO." *Id.*

Although the FAC adds further details, the FAC identifies only two specific "filings, contentions, and correspondence" that the PTO would have discovered: the Miller Declaration and the Hirata invalidity contentions.  Specifically, CertainTeed alleges that, "had the Patent Office been informed of the existence of the 2018 N.D. Cal. Action, the Examiner would have known the schedule for claim construction, reviewed the claim construction briefs, learned about CertainTeed's indefiniteness arguments and identified the Miller Declaration." FAC ¶ 223.  Additionally, the FAC alleges that the "Examiner likely also would have requested other documents from the N.D. Cal. Action, such as the Hirata Invalidity Contentions." *Id.*

As discussed above, CertainTeed has not adequately alleged that the Hirata invalidity contentions would have been material to the prosecution of the '492 and '076 patents because the Hirata invalidity contentions would have been cumulative of the Hirata prior art reference itself, which was before the PTO.  *See* pp. 15–17, *supra*.  Accordingly, the fact that the Hirata invalidity contentions were filed in the 2018 N.D. Cal. Action does not render knowledge of the 2018 N.D. Cal. Action material.

Case No. 19-CV-00802-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1       Without the Hirata invalidity contentions, CertainTeed's only remaining argument is that,

2  had the PTO known about the 2018 N.D. Cal. Action, the PTO would have discovered the Miller

3  Declaration.  However, the FAC independently alleges that Pacific Coast's failure to disclose the

4  Miller Declaration constitutes inequitable conduct, *see* FAC ¶¶ 144–81, and Defendants concede

5  that those allegations are sufficient to state an inequitable conduct claim, *see* Reply at 12–13.

6  Accordingly, CertainTeed has a live inequitable conduct claim based on the Miller Declaration

7  that is independent of CertainTeed's claim regarding knowledge of the 2018 N.D. Cal. Action.

8  Thus, even if CertainTeed is correct that knowledge of the 2018 N.D. Cal. Action would have led

9  the PTO to find the Miller Declaration, Pacific Coast's failure to disclose the 2018 N.D. Cal.

10 Action does not provide CertainTeed with an additional inequitable conduct claim.

11 **IV.    CONCLUSION**

12      Because CertainTeed has failed to cure the deficiencies in the original complaint, granting

13 leave to amend would be futile and cause undue delay.  *See Leadsinger*, 512 F.3d at 532.

14 Moreover, requiring Defendants to file yet another motion to dismiss would be unduly prejudicial.

15 *Id.*  Thus, for the foregoing reasons, the Court GRANTS Defendants' motion to dismiss with

16 prejudice.  Going forward, CertainTeed's inequitable conduct claims may rely only on

17 CertainTeed's allegations regarding Mr. Gafford's failure to disclose the Miller Declaration.

18 **IT IS SO ORDERED.**

19

20 Dated: November 22, 2021

21                                         _Lucy H. Koh_

22                                         _____

23                                         LUCY H. KOH
                                           United States District Judge

24

25

26

27

28
Case No. 19-CV-00802-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California